Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for ML Capital Investments LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-113-ELG |
| | ) | (Chapter 11) |
| FAITH ASSEMBLY OF CHRIST, INC. | ) | |
| | ) | |
| Debtor. | ) | |

**RESPONSE IN SUPPORT OF U.S.
TRUSTEE'S MOTION TO DISMISS CHAPTER 11 CASE**

Comes now ML Capital Investments LLC ("MCIL"), by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in response to the U.S. Trustee's Motion to Dismiss Chapter 11 Case (the "Motion," as found at DE #11, with the proponent thereof being known as the "UST" and the debtor herein being known as "Faith Assembly of Christ" or the "Debtor") states as follows:

**I.     Introduction**

The bankruptcy system is designed to "to relieve the honest debtor," *Williams v. U.S. Fid. & Guar. Co.*, 236 U.S. 549, 554 (1915), as "Congress gave 'honest but unfortunate debtor[s],' the chance to repay their debts should they acquire the means to do so," *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 366 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Faith Assembly of Christ is neither honest nor unfortunate.

1

The UST ably notes the Debtor's utter disregard for the rigors of bankruptcy, with the entity's truant demeanor having since extended to Faith Assembly of Christ failing to appear at the meeting of creditors held under Section 341 of Title 11 of the United States Code. Yet there may well be a reason, rooted more in malfeasance than nonfeasance, for the Debtor's noncompliance with bankruptcy procedure: had the Debtor cared to furnish the barest collection of documents, or to answer any of the inquiries of the UST or MCIL, the significant omission of material information would have rather promptly come to light.

To be sure, dismissal of this case is not merely appropriate but should be with prejudice. The Debtor has failed to schedule its largest secured creditor (MCIL), has failed to schedule at least one other creditor, and, too, has somehow failed to schedule its most valuable asset: a parsonage in the District of Columbia suburbs. For an entity supposedly in the business of spreading the teachings of the Good Book, the Debtor seems to struggle mightily with "[t]hou shalt not bear false witness. . ." Exodus 20:16 (King James).

**II.      Standard**

Title 11 of the United States Code (the "Bankruptcy Code") provides that matters under Chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including, *inter alia*:

> . . . (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any). . .

11 U.S.C. § 1112(b)(4). "The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. § 1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582–83 (Bankr. S.D.N.Y. 2009)).

Once a creditor has filed a motion such as this, seeking conversion or dismissal and setting forth cause within the meaning of Section 1112(b)(4) of the Bankruptcy Code, the burden shifts to the Debtor to demonstrate the satisfaction of four criteria:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-- (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-- (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). Thus the Debtor must establish (i) unusual circumstances giving rise to the underlying cause; (ii) a reasonable likelihood of timely plan confirmation; (iii) reasonable justification for the cause giving rise to the underlying motion; and (iv) imminent cure of the subject deficiency. Critically, these criteria are conjunctive, not disjunctive, so unless each and every criterion is satisfied, the Bankruptcy Code requires a case to be converted.

### III.    Argument: Dismissal with Prejudice is Appropriate

The UST's Motion amply sets forth cause to dismiss this case. And the ills complained of therein are, unto themselves, well sufficient to merit dismissal with prejudice. Yet an examination of the additional factors meriting dismissal – some unknown to the UST precisely because of the Debtor's intransigence, and some emerging after the Motion was filed – cements the reality that in a court of equity, this Debtor should not be permitted to again invoke the protections of bankruptcy anytime soon.

The Debtor's schedules disclose the existence of two assets: a 2019 Lincoln Navigator, Schedule A/B, DE #1, at p. 10, § 47.1, and the real property located at 4821 Georgia Avenue, NW, Washington, DC 20011, *Id.* at p. 11, § 55.1. On their face, these disclosures are already suspect – for the Debtor to literally not have a single dollar, in cash or on deposit, defies logic. It is equally difficult to credit the Debtor's assertions that (i) it has not had a single dollar in revenue at any point in the current year or the two preceding years, Statement of Financial Affairs, DE #1, at p. 18, § 1; (ii) it has no books or records, *Id.* at p. 22, § 26; and (iii) it has no "officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control," *Id.* at p. 23, § 28.[1]

Normally, when a debtor's schedules raise facial questions, the meeting of creditors is an opportune occasion to gain insight into such matters before bringing them to the court's attention. In this case, though, no such opportunity was presented; while MCIL and its undersigned counsel appeared at the Section 341 meeting, the Debtor apparently thought better of so doing. *See* Unnumbered Docket Entry of May 14, 2024. This failure came after the Debtor also thought better of attending the initial debtor interview. Motion, DE #11, at ¶ 7.

Yet the most damning issue may be the one not readily discernable from the face of the Debtor's scant and meager filings: Faith Assembly of Christ has a significant undisclosed asset and at least two undisclosed creditors. While the Debtor did list the aforementioned property in the District of Columbia (the "DC Property"), the Debtor conveniently neglected to schedule a parsonage in Upper Marlboro, Maryland (the "Parsonage"). The Parsonage was acquired less than

---

[1] As much as the putative absence of any persons in control tends to defy logic, such may also help explain why there is not a resolution authorizing the Debtor to seek bankruptcy protection, in contravention of Local Rule 1007-2; it would seem difficult to achieve a quorum in an empty boardroom.

4

two years ago, for the rather notable sum of $1,585,000.00, and is owned by the Debtor, the Debtor's designee (who signed the schedules under the pains and penalties of perjury),[2] and the wife of the Debtor's designee. *See* Deed, attached hereto as Exhibit A.

The schedules are not just missing a notable asset, though; they are also missing creditors. As a starting point, MCIL is nowhere listed on Schedules D, E or F, despite holding a deed of trust on the DC Property, *see* Deed of Trust, attached hereto as Exhibit B, and having been set to foreclose the DC Property just 17 minutes after the Debtor petitioned for bankruptcy relief, *see* Notice of Foreclosure, attached hereto as Exhibit C. Given that this case was commenced in such intimate proximity to the foreclosure auction, and given that the Debtor was served with notice of the foreclosure auction, *Id.* at p. 3, the omission of MCIL from the schedules is truly astonishing.

There appear to be other creditors missing too. As noted *supra*, the Debtor acquired the Parsonage in late 2022. A review of land records shows the acquisition to have been subject to seller financing of $350,000.00. *See* Deed of Trust, attached hereto as Exhibit D. Unless that obligation has been retired *en toto* in the roughly 18 months since the Parsonage was acquired (which would be an impressive accomplishment for an entity that professes to not have had a single dollar of income during the same time period), it would seem the sellers – Randy E. Otis and Annetta L. Otis – are quite likely unscheduled creditors. And there is absolutely no reason to believe they have even the slightest clue the Debtor has sought bankruptcy protection, since their names do not once grace the schedules or the mailing matrix.

---

[2] Maybe. All of the boxes on the Declaration Under Penalty of Perjury for Non-Individual Debtors have been left unchecked. DE #1 at p. 6. This does create a somewhat unique construct where the Debtor's designee may have avoided perjuring himself by either negligent happenstance or cognizant design. The Statement of Financial Affairs, however, is signed under penalty of perjury. *Id.* at p. 24.

Familiarly, "lack of good faith can constitute cause for dismissal of a chapter 11 petition under § 1112(b)." *La Trinidad Elderly LP SE*, 627 B.R. 779, 800 (B.A.P. 1st Cir. 2021). And while various multi-prong, disjunctive tests permeate case law on indicia of bad faith, it is generally understood that "[b]ad-faith conduct can include prepetition bad-faith conduct, post-petition bad faith conduct, or petitions that serve no legitimate bankruptcy purpose." *In re M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 865 (Bankr. S.D. Tex. 2023).

It is difficult to square concealing an asset valued at in excess of $1.5 million (with less than $400,000.00 of secured debt) with proceeding in good faith. It is difficult to observe the omission of two secured creditors and to simultaneously credit the Debtor with proceeding in good faith. And it is difficult to look at a debtor treating the meeting of creditors as a discretionary get together and to surmise that debtor is acting in good faith.

Yet even without the overwhelming stench of bad faith, there would still be cause for dismissal under Section 1112. The Debtor has failed – without excuse – to timely file complete and file accurate schedules. 11 U.S.C. § 1112(b)(4)(F). The Debtor has failed to attend the meeting of creditors. 11 U.S.C. § 1112(b)(4)(G). And, per the Motion, the Debtor has failed to provide the United States trustee with information reasonably requested. 11 U.S.C. § 1112(b)(4)(H).

These realities uniformly militate in favor of dismissal with prejudice. The Debtor has not come to this Honorable Court in good faith but, rather, has orchestrated a Chapter 11 case punctuated by dishonor and disregard. Allowing the Debtor to proceed would be only to condone Faith Assembly of Christ's apparent contempt for the bankruptcy process; allowing the Debtor to refile for bankruptcy protection would be only to countenance this utter contempt. After all, ". . . whoever is dishonest with very little will also be dishonest with much." Luke 16:10 (New International Version).

6

## IV.  Conclusion

WHEREFORE, ML Capital Investments LLC respectfully prays this Honorable Court (i) grant the Motion, with prejudice for a period of two years; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 17, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for ML Capital Investments, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig